*In The*

*United States Court of Appeals*

*For The Eighth Circuit*

_____

## No. 17-2300

_____

UNITED STATES OF AMERICA

*Appellee,*

V.

WAKINYAN WAKAN MCARTHUR

*Appellant.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

_____

### APPELLANT'S BRIEF

_____

| | |
|---|---|
| Frederick J. Goetz<br>GOETZ & ECKLAND P.A.<br>Banks Building<br>615 First Avenue N.E., Suite 425<br>Minneapolis, MN 55413<br>(612) 874-1552 | Andrew R. Winter<br>David M. Genrich<br>Assistant United States Attorneys<br>600 U.S. Courthouse<br>300 South Fourth Street<br>Minneapolis, MN 55415<br>(612) 664-5600 |
| *Attorney for Appellant* | *Attorneys for Appellee* |

# SUMMARY OF THE CASE

Wakinyan Wakan McArthur was convicted of conspiracy to participate in racketeering activity, conspiracy to use and carry firearms during and in relation to a crime of violence, conspiracy to distribute and possess with intent to distribute controlled substances, distribution of controlled substances, and two counts of use and carrying of a firearm during and in relation to a crime of violence. See 18 U.S.C. §1962(d); 18 U.S.C. §924(o); 21 U.S.C. §841(a), (b); 18 U.S.C. §2, 18 U.S.C. §924(c). The District Court initially imposed a total sentence of 513 months imprisonment. In his first appeal McArthur challenged both his convictions and sentences on the §924(c) counts. In *United States v. McArthur,* 850 F.3d 925, 943 (8th Cir 2017); this Court vacated McArthur's conviction on the second §924(c) count, affirmed his remaining conviction, vacated his entire sentence, and remanded for resentencing. On remand, the District Court imposed a total sentence of 480 months. McArthur now appeals this sentence. McArthur does not request oral argument.

# TABLE OF CONTENTS

SUMMARY OF THE CASE ................................................................ i

TABLE OF AUTHORITIES ............................................................ iii

JURISDICTIONAL STATEMENT .................................................... 1

STATEMENT OF THE ISSUES ......................................................... 2

STATEMENT OF THE CASE .......................................................... 3

SUMMARY OF THE ARGUMENT .................................................. 11

ARGUMENT ................................................................................ 12

    *I. Standard of Review* .............................................................. 12

    *II. The Guidelines Calculation* ................................................. 13

        A. Drug Quantity ................................................................. 13

        B. No enhancement is warranted for maintaining a stash house
            ............................................................................... 16

        C. McArthur did not engage in a pattern of criminal conduct as a
            livelihood ................................................................... 22

        D. The error in the Guidelines calculation was not harmless .. 24

CONCLUSION .............................................................................. 26

CERTIFICATE OF COMPLIANCE ................................................... 27

Appellate Case: 17-2300    Page: 3    Date Filed: 08/07/2017 Entry ID: 4565548

# TABLE OF AUTHORITIES

**Cases**

*United States v. Allen*, 440 F.3d 449 (8th Cir. 2006) ............................ 14

*United States v. Flores,* 362 F.3d 1030 (8th Cir. 2004) .......................... 17

*United States v. Flores-Olague,* 717 F.3d 526 (7th Cir. 2013) ................. 19

*United States v. Garcia,* 774 F.3d 472 (8th Cir. 2014) ...................... 19, 20

*United States v. Harris,* 390 F.3d 572 (8th Cir. 2004) ........................... 25

*United States v. Johnston,* 533 F.3d 972 (8th Cir.2008) ........................ 24

*United States v. Lawrence*, 854 F.3d 462 (8th Cir. 2017) .................. 2, 14

*United States v. Mannings*, 850 F.3d 404 (8th Cir. 2017) ........... 2, 12, 13

*United States v. Mashek,* 406 F.3d 1012 (8th Cir.2005) ........................ 24

*United States v. McArthur,* 850 F.3d 925 (8th Cir 2017) ................. i, 7, 9

*United States v. Miller,* 698 F.3d 699 (8th Cir. 2012) .............. 2, 17, 18, 19

*United States v. Nolder*, 887 F.2d 140 (8th.Cir.1989) ........................ 3, 23

*United States v. Spikes*, 543 F.3d 1021 (8th Cir. 2008) ............. 13, 24, 26

*United States v. Sykes,* 854 F.3d 457 (8th Cir. 2017) ............................ 20

*United States v. Villareal*, 567 Fed. Appx. (8th Cir. 2014) ................... 17

*United States v. Yellow Horse*, 774 F.3d 493 (8th Cir. 2014) .......... 13, 14

Appellate Case: 17-2300    Page: 4    Date Filed: 08/07/2017 Entry ID: 4565548

## Statutes

18 U.S.C. §2 .............................................................................i, 3

18 U.S.C. §924(c) .........................................................................i

18 U.S.C. §924(c)(1)(A) ..........................................................1, 4

18 U.S.C. §924(o) .................................................................i, 1, 3

18 U.S.C. §1959(a)(3) ...................................................................3

18 U.S.C. §1959(a)(5) ...................................................................3

18 U.S.C. §1962(d) .............................................................i, 1, 3

18 U.S.C. §3231 ............................................................................1

18 U.S.C. §3553(a) .......................................................................7

18 U.S.C. §3742 ............................................................................2

21 U.S.C. §841(a)(1)....................................................i, 1, 4, 13

21 U.S.C. §841(b)(1)(A).............................................................i, 4

21 U.S.C. §841(b)(1)(B).....................................................1, 4, 13

21 U.S.C. §841(b)(1)(C)...........................................................1, 4

21 U.S.C. §846.............................................................................4

21 U.S.C. §856(a)(1) ...................................................................17

28 U.S.C. §1291 ...........................................................................2

29 U.S.C. §206(a)(c) ..................................................................24

Appellate Case: 17-2300     Page: 5     Date Filed: 08/07/2017 Entry ID: 4565548

## Other Authorities

U.S.S.G. §2D1.1 ................................................................................ 2, 5, 16

U.S.S.G. §2D1.1(b)(12) ........................................... 2, 5, 16, 17, 18, 19, 22

U.S.S.G. §2D1.1(b)(14) ....................................................................... 5

U.S.S.G. §2D1.1(b)(15)(E) .................................................. 3, 5, 22, 23, 24

U.S.S.G. §2D1.1(c) .......................................................................... 13

U.S.S.G. §2D1.1(c)(4) ...................................................................... 15

U.S.S.G. §2D1.1(c)(7) ...................................................................... 15

U.S.S.G. §2D1.1(c)(8) ...................................................................... 16

U.S.S.G. §2D1.1, Commentary, Application Note 8 (B) ......................... 16

U.S.S.G. §2D1.1. Commentary, Application Note 8 (D) .................... 15, 16

U.S.S.G. §2D1.1, Commentary, Application Note 17 ........................... 17

U.S.S.G. §2D1.1, Application Note 19 ................................................ 22

U.S.S.G. §3D1.4 ................................................................................ 6

U.S.S.G. §4B1.3 ............................................................................... 23

U.S.S.G. §4D1.3 ............................................................................... 23

U.S.S.G. Chapter 5, Part A, Commentary, Application Note 2 ................ 6

Appellate Case: 17-2300    Page: 6    Date Filed: 08/07/2017 Entry ID: 4565548

# JURISDICTIONAL STATEMENT

Wakinyan Wakan McArthur was charged with violations of 18

U.S.C. §1962(d); 18 U.S.C. §924(o); 21 U.S.C. §§841(a)(1), (b)(1)(B) and

(b)(1)(C); and 18 U.S.C. §924(c) (1)(A).  Jurisdiction in the District Court

was founded on 18 U.S.C. §3231 as Mr. McArthur was charged with

offenses against the laws of the United States.  A jury trial was held

before the Honorable John R. Tunheim, Chief United States District

Court Judge for the District of Minnesota, commencing on January 24,

2013 and concluding on March 19, 2013 with guilty verdicts on the

above offenses.  On September 30, 2014, Mr. McArthur was sentenced

by Judge Tunheim to a total term of imprisonment of 516 months.

Judgement was entered on October 8, 2014.  McArthur initially

appealed his convictions on Counts 10 and 11, the two §924(c) counts, to

the United States Court of Appeals for the Eighth Circuit. This Court

vacated McArthur's conviction on Count 11, affirmed his remaining

convictions, vacated his entire sentence, and remanded for

resentencing. On May 31, 2017, Chief Judge Tunheim resentenced

McArthur to a total term of imprisonment of 480 months. The Amended

Judgment in a Criminal Case was filed on June 6, 2017. McArthur's notice of appeal was timely filed on June 9, 2017.

This Court's jurisdiction is based on 18 U.S.C. §3742 and 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

1. What quantity of drugs is the defendant responsible for under U.S.S.G. §2D1.1 given the jury's findings that the defendant was responsible for less than 500 grams of cocaine and at least 28 grams or more but less than 280 grams of cocaine base?

   The District Court found Appellant responsible for between 1,000 and 3,000 kilograms of cocaine.

   Apposite Authorities:

   *United States v. Lawrence,* 854 F.3d 462 (8th Cir. 2017)
   *United States v. Mannings,* 850 F.3d 404 (8th Cir. 2017)

2. Whether the defendant ever maintained a "stash house" so as to subject him to a 2-level enhancement under U.S.S.G. §2D1.1(b)(12)?

   The District Court found the enhancement applied.

   Apposite Authorities:

   U.S.S.G. §2D1.1(b)(12)
   *United States v. Miller,* 698 F.3d 699 (8th Cir. 2012)

2

3. Whether an offense level increase is warranted under

   §2D1.1(b)(15)(E) for committing the offense as part of a pattern of

   criminal conduct engaged in as a livelihood?

   The District Court found the enhancement applied.

   Apposite Authorities:

   U.S.S.G. §2D1.1(b)(15)(E)
   *United States v. Nolder,* 887 F.2d 140 (8th Cir. 1989)

## STATEMENT OF THE CASE

1. <u>Procedural History</u>

   Wakinyan Wakan McArthur was charged in the Redacted

Superseding Indictment with the following offenses:

- Count 1: Conspiracy to participate in racketeering activity in

  violation of 18 U.S.C. §1962(d);

- Count 2: Conspiracy to use and carry firearms during and in

  relation to a crime of violence in violation of 18 U.S.C. §1962(d) and

  18 U.S.C. §924(o);

- Count 3: Attempted murder in aid of racketeering in violation of 18

  U.S.C. §1959(a)(5) and 18 U.S.C. §2;

- Count 4: Assault with a dangerous weapon in aid of racketeering in

  violation of 18 U.S.C. §1959(a)(3) and 18 U.S.C. §2;

3

- Count 5:  Use and carrying of firearm during and in relation to a crime of violence in violation of 18 U.S.C. §924(c) (1)(A);

- Count 7:  Conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(A), (b)(1)(B), (b)(1)(C) and 21 U.S.C. §846;

- Count 8:  Aiding and abetting distribution of a controlled substance in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(C);

- Count 9:  Use and carrying of firearm during and in relation to a crime of violence in violation of 18 U.S.C. §924(c) (1)(A);

- Count 10:  Use and carrying of firearm during and in relation to a crime of violence in violation of 18 U.S.C. §924(c) (1)(A); and

- Count 11:  Use and carrying of firearm during and in relation to a crime of violence in violation of 18 U.S.C. §924(c) (1)(A).

The case came on for trial before the Honorable John R. Tunheim, Chief Judge of the United States District Court for the District of Minnesota, beginning on January 24, 2013.  On March 19, 2013, the jury returned its verdict finding McArthur not guilty of counts 3, 4, 5, and 9 but convicting him on counts 1, 2, 7, 8, 10, and 11.

4

McArthur raised a number of objections to the presentence investigation report (PSR) including as to drug quantity under U.S.S.G. §2D1.1, the application of the "stash house" enhancement under U.S.S.G. §2D1.1(b)(12), and the application of the pattern of criminal conduct engaged in as a livelihood enhancement under U.S.S.G. §2D1.1(b)(14).[1] (DCD 1382 pp. 1, 3).

The case came on for sentencing before the Honorable John R. Tunheim on September 30, 2014. Following an evidentiary hearing, the District Court denied McArthur's objections as to the above Guidelines factors. (See Sentencing Transcript from hearing of September 30, 2014, hereafter "ST 1," at pp. 102-104, 106). As to drug quantity, the district court found that the conspiracy included the equivalent of between 1,000 and 3,000 kilograms of marijuana. (ST 1 at p. 102).

For Count group 1, the racketeering activity, the district court found the base offense level was 33, there was a four-level increase for McArthur's leadership role in the offense, and a two-level increase for obstruction of justice. (ST 1 at p. 105). This calculation yielded an adjusted offense level on Count group 1 of 39. (Id.) The same factors led to

_____

[1] The enhancement is now found and U.S.S.G. §2D1.1(b)(15)(E).

Appellate Case: 17-2300    Page: 11    Date Filed: 08/07/2017 Entry ID: 4565548

an adjusted offense level of 39 as to Count groups 2 and 3. (ST 1 at pp. 105-106).

As to Count group 4, involving the distribution of controlled substances, namely cocaine and cocaine base, the district court found the base offense level was 32 based on drug quantities, applied a two-level increase for possession of a firearm, a two-level increase because of the credible threat to use violence, a two-level increase for maintaining the premises for purposes of manufacturing or distributing a controlled substance, a two-level increase because of the offense being a part of a pattern of criminal conduct, a two-level increase for the use of minors, a four-level increase for role in the offense as a leader, and a two-level increase for obstruction of justice. (ST 1 at p. 106). That yielded a total offense level of 48. (ST 1 at p. 106). Under the multiple count adjustment analysis of U.S.S.G. §3D1.4, the District Court added an additional point bringing the total offense level to 49. (ST 1 at p. 107). The District Court then reduced the offense level to 43 under U.S.S.G. Chapter 5, Part A, Commentary, Application Note 2. (Id.).  Finding that McArthur was in criminal history category III, the District Court determined the advisory Guidelines range was life imprisonment. (ST 1 p. 107).

6

Considering the factors of 18 U.S.C. §3553(a), the District Court then granted McArthur's motion for a downward variance and imposed a total sentence of 516 months imprisonment. (ST 1 pp. 121-122). The breakdown of the sentence was 156 months imprisonment on Counts 1, 2 and 8; 60 months on Count 7; 60 months on Count 10 and 300 months on Count 11 with the sentences on Counts 1, 2 and 7 to be served concurrently to one another and the sentences on Counts 10 and 11 to be served consecutively. (Id).

McArthur appealed his convictions on Counts 10 and 11 to the United States Court of Appeals for the Eighth Circuit. In its opinion filed on February 24, 2017, the Eighth Circuit Court of Appeals vacated McArthur's conviction on Count 11, affirmed his remaining convictions, vacated McArthur's entire sentence, and remanded for resentencing. *United States v. McArthur,* 850 F.3d 925, 943 (8th Cir. 2017).

The case came on for resentencing before Chief Judge Tunheim on May 30 and 31, 2017. Prior to resentencing McArthur reaffirmed and renewed all of his prior objections as set forth in his initial position pleading as to sentencing with the exception of those as to Count 11 which had been vacated. (DCD 1710 p. 3). McArthur maintained his prior

7

guidelines objections at the resentencing hearing. (See Sentencing
Transcripts from May 30-31, 2017, hereafter "ST 2," at p. 98). The
District Court overruled the objections but noted they were preserved.
(Id.). The District Court then adopted the factual statements in the
Revised Presentence Report, hereafter "RPSR." (ST 2 p. 99). The District
Court determined the Guidelines calculations were unchanged with the
exception being as to Count group four which had a base offense level of
30 due to intervening amendments to the Guidelines as to drug quantity.
(Id.  The total adjusted offense level remained 49 which was reduced to
43. (Id.). With a criminal history category of III, McArthur's advisory
Guidelines range remained life imprisonment. (Id).

The District Court then again varied downward from the advisory
Guidelines range to a total term of imprisonment of 480 months. (ST 2
pp. 142-143). The District Court imposed a sentence of 240 months on
Counts 1, 2 and 8 and a 420 month sentence on Count 7, all to be served
concurrently, and a 60 month consecutive sentence on Count 10. (ST 2 p.
144).

8

2. <u>Facts relevant to issue submitted for review</u>

Appellant respectfully refers the Court to its discussion of relevant facts in its opinion in *United States v. McArthur,* 850 F.3d 925, 931-933 (8th Cir. 2017). In addition thereto, Appellant notes the following.

Kenneth Roberts was a former Native Mob member who testified for the government at trial. Roberts testified that he purchased between 1/8 of an ounce and an ounce of crack cocaine directly from McArthur on four to five occasions. (TT pp. 2344-2345).[2] In the spring of 2010, Roberts testified that McArthur, "Kon," was in possession of nine ounces of powder cocaine. (TT p. 2354). Roberts also testified that he saw McArthur give one ounce of crack cocaine to a Jeremy Neadeou. (TT p. 2355).

Dwight Jones was another former Native Mob member who testified for the government. Jones testified that in 2009 and 2010 he was getting cocaine and crack cocaine from "Little White," also known as Christopher Wuori. (TT p. 4577). Jones testified that he would be in the "white house" when McArthur was there and Chris Wuori would cook powder

---

[2] "TT" references the trial transcript by page number.

cocaine into crack.[3] (TT pp. 4578-4579). Jones did not indicate who else resided in the house at the time. Jones also testified that he saw McArthur in possession of drugs a couple of times in the summer of 2009, a couple ounces of crack cocaine. (TT p. 4580). Jones also told agents that he had never seen McArthur with drugs. (TT p. 4644).

Dale Pindegayosh was another cooperating former Native Mob member who testified on behalf of the government at trial. Pindegayosh testified that he made trips with Christopher Wuori to pick up drugs (powder cocaine) 15 times within a two year period. (TT p. 5679). Pindegayosh testified sometimes they would get a kilo and would return to Cass Lake and "cook it all up." (TT p. 5680). Sometimes the cooking would take place in the "white house." (Id). McArthur told Pindegayosh he pooled money for drugs. (TT p. 5683). Pindegayosh testified McArthur was present at the "white house" when Wuori was cooking up the crack cocaine. (TT p. 5683).

Pindegayosh also testified about a search warrant that was executed at the "white house" in February of 2011. (TT p. 5689). McArthur

---

[3] Evidence at trial established that the "white house" was the address on Grant Utley Avenue in Cass Lake, Minnesota.

10

resided there at the time.  Id.  No evidence was introduced at trial that any drugs were found.

The "white house" on Grant Utley Avenue was also thoroughly searched when McArthur lived there on January 24, 2012.  (TT pp. 5524, 5534-5535).  The only drugs found was a small amount of marijuana consistent with personal use.  (TT pp. 5534-5535).  No other drugs were located anywhere in the residence.  (TT p. 5534).  Also, law enforcement did not find anything during their extensive search of the "white house" at this time that was associated with drug distribution.  (TT p. 5535).

Evidence was also introduced at trial, and summarized in the RPSR, about a December 2010 Native Mob council meeting in which McArthur is heard telling other Native Mob members that they can cut their drugs up at his "crib."  (PSR ¶267).  McArthur does not dispute he was living at the "white house" at this time.

## SUMMARY OF ARGUMENT

The District Court erred in its factual findings as to drug quantity and whether McArthur maintained a premises for the purpose of manufacturing or distributing a controlled substance.  The District Court also incorrectly applied the enhancement for engaging in a

11

pattern of criminal conduct as a livelihood to the facts. Collectively, these errors resulted in a ten level increase in McArthur's adjusted offense level under the Guidelines. The error was not harmless as McArthur's advisory guidelines range when properly calculated would have been 324 months to 405 months imprisonment rather than life imprisonment and the District Court did not indicate that he would have imposed the same sentence, a total sentence of 480 months, if he had sustained appellant's objections on these guidelines factors. Appellant therefore requests that his sentence be vacated and the case remanded for resentencing.

## ARGUMENT

### I. *Standard of Review*

The Court of Appeals reviews the district court's application of the Guidelines to the facts de novo; its factual findings for clear error; and the ultimate sentence for reasonableness. *United States v. Mannings*, 850 F.3d 404, 408 (8th Cir. 2017). "A failure to properly calculate the advisory Guidelines range is a significant procedural error, and '[a] non-harmless error in calculating the guidelines range requires a remand

for resentencing.'" *United States v. Spikes*, 543 F.3d 1021, 1023 (8th Cir. 2008) (citation omitted).

## II. The Guidelines Calculation.

### A. Drug Quantity

The base offense level for the pseudo Count Four in Count 1 and the offense in Count 7, conspiracy to distribute and possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B), is determined by reference to the Drug Quantity Table. U.S.S.G. § 2D1.1 (c). Here, the jury made specific findings that McArthur was responsible for the distribution of less than 500 grams of cocaine and 28 grams or more but less than 280 grams of cocaine base.

The government bears the burden of establishing drug quantity and sentencing enhancements by a preponderance of the evidence. *United States v. Mannings,* 850 F.3d 404, 408 (8th Cir. 2017). The Court of Appeals reviews the district court's determination of drug quantity for clear error, "applying the preponderance-of-the-evidence standard." *United States v. Yellow Horse*, 774 F.3d 493, 496 (8th Cir. 2014). Appellant faces an "uphill battle" challenging the district court's determination of drug quantity on appeal as this Court "will reverse ...

13

only if the entire record definitely and firmly convinces [the Court] that a mistake has been made." *United States v. Allen*, 440 F.3d 449, 452 (8th Cir. 2006).

While in a drug trafficking conspiracy a sentencing court may consider reasonably foreseeable transactions of others, the scope of such relevant conduct is not without limits. *Yellow Horse*, 774 F.3d at 496. As this Court recently observed in *United States v. Lawrence*, 854 F.3d 462 (8th Cir. 2017):

> Relevant conduct includes "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S. Sentencing Guidelines §1B1.3(a)(2). "In drug conspiracies, the district court may consider amounts from other drug transactions, provided the other dealings are part of the same course of conduct or scheme." United States v. Bieri, 21 F.3d 811, 817 (8th Cir. 1994). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. §1B1.3 cmt. n.5(B)(i). "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other." Id. §1B1.3 cmt. n.5(B)(ii). Courts consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.... The nature of the offenses may also be a relevant consideration." Id.

*Lawrence*, 854 F.3d at 467-468.

In the case at bar there was little evidence to show that McArthur himself was involved in the sale of cocaine or cocaine base in quantities beyond the minimum under the jury's findings. The District Court found that McArthur should be held responsible for the greatest amount of drugs that could still be consistent with the jury's findings: 499 grams of cocaine and 279 grams of cocaine base. Applying the Drug Equivalency Tables of §2D1.1, Application Note 8 (D), the RPSR concluded that Mr. McArthur is responsible for 1,096 kg of marijuana which, pursuant to §2D1.1 (c)(4), resulted in a base offense level of 32 as the amount of drugs is between 1,000 and 3,000 kg of marijuana. (RPSR ¶ 338).

Equally plausible and consistent with the jury's findings would be holding McArthur responsible for at least 100 kg but less than 400 kg of marijuana resulting in a base offense level of 26. U.S.S.G. §2D1.1 (c)(7). This range is arrived at by using the amounts at the low end of the jury's findings, specifically holding Mr. McArthur responsible for 1 gram of cocaine, the equivalent of 200 grams of marijuana, and 28 grams of cocaine base, the equivalent of 99.988 kilograms of marijuana. Combined, McArthur is therefore responsible for 100.18 kilograms of

15

marijuana. U.S.S.G. §2D1.1. Commentary, Application Note 8 (B) and (D).

Based upon the evidence adduced at trial, the District Court should have found that McArthur was responsible for 1 gram of cocaine and 28 grams of cocaine base. Applying the drug equivalency calculations of U.S.S.G. §2D1.1, Commentary, Application Note 8 (D), would have resulted in a range of between 100 but less than 400 kilograms of marijuana and a base offense level of 24. §2D1.1(c)(8).

B. <u>No enhancement is warranted for maintaining a stash house.</u>

§2D1.1(b)(12) of the Guidelines provides for a two-level offense level increase "if the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." Note 17 of the Commentary to §2D1.1 more fully explains this enhancement stating in pertinent part as follows:

> Subsection (b)(12) applies to a defendant who knowingly maintains a premises…for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purposes of distribution.

> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.

16

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

U.S.S.G. §2D1.1, Commentary, Application Note 17 (2016).

In order to support a two-level enhancement under U.S.S.G. §2D1.1 (b)(12), the Government must establish that drug dealing was a major purpose for which the defendant maintained the premises. *United States v. Villareal*, 567 Fed. Appx. 467, 471 (8th Cir. 2014). The government bears the burden of proving all sentencing enhancements by a preponderance of the evidence. *United States v. Flores,* 362 F.3d 1030, 1037 (8th Cir. 2004).

Defendant acknowledges that just because a premises is someone's home, and therefore by definition a place used 100% of the time for a lawful purpose, this does not mean that the premises could not otherwise be a "stash house" within the meaning of §2D1.1(b)(12). *United States v. Miller,* 698 F.3d 699, 706-707 (8th Cir. 2012). In *Miller,* the Eighth Circuit looked to the "crack house" statute, 21 U.S.C. §856(a)(1), in

interpreting §2D1.1(b)(12) as Congress directed the sentencing guidelines commission to adopt the "stash house" enhancement when it enacted §856. Id.

Looking to decisions upholding §856 convictions as a guide, the Eighth Circuit noted that a home can become a "crack house" within the meaning of §856 where a "defendant used the premises in question as a primary residence as well as for substantial drug trafficking." *Miller,* 698 F.3d at 707. Thus, the Eighth Circuit concluded that the "stash house" enhancement applies "when a defendant uses the premises for the purposes of substantial drug trafficking activities, even if the premises was also her family home at the times in question." Id.

Evidence of "substantial drug trafficking activities" in *Miller* included four controlled buys from the Miller residence as well as other sales of methamphetamine occurring at the premises. Id at pp. 702-703. Additional evidence supporting application of the enhancement included that Mr. Miller, who resided at the premises, admitted distributing massive quantities of methamphetamine over the course of six years and telling his drug customers they would find methamphetamine in various

locations around the premises as well as evidence that he kept records related to his drug distribution activities at his home. Id at 706.

In *United States v. Flores-Olague,* 717 F.3d 526 (7th Cir. 2013); the Seventh Circuit found the Eighth Circuit's decision in *Miller* informative and persuasive in determining when the "stash house" enhancement of §2D1.1(b)(12) applies. In determining whether a family home could also be a "stash house," the Seventh Circuit considered both the frequency and significance of the illicit activities conducted on the premises. *Flores-Olague,* 717 F.3d at 533-534. Evidence supporting the application of the "stash house" enhancement in *Flores-Olague* included that the defendant sold and stored drugs at his home "on a daily basis" over a three-year period. Id at 533. Additionally, in a search of the home law enforcement recovered $53,620.00 in United States currency, four firearms, five cellular phones, and other paraphernalia. Id at 534.

Other cases finding that the enhancement applies have also involved substantial drug trafficking activity at the premises as opposed to a one-off occurrence. In *United States v. Garcia,* 774 F.3d 472 (8th Cir. 2014); the Eighth Circuit found that the enhancement applied based on evidence that the defendant regularly used a detached garage on the premises to

store vehicles that were used in a drug conspiracy and that these vehicles sometimes contained large quantities of drugs when they were stored in the garage. *Garcia,* 774 F.3d at 475. Similarly, in *United States v. Sykes,* 854 F.3d 457 (8th Cir. 2017); the "stash house" enhancement applied based on evidence of four controlled buys occurring at the residence over a period of a month as well as the seizure of packing materials, $748.00 in cash, a nylon gun case, a measuring cup and a razorblade with cocaine residue being found at the time of the search. *Sykes,* 854 F.3d at 461-462.

McArthur does not dispute that the evidence shows that at various points in time the "white house" on Grant Utley Avenue was used to manufacture or distribute controlled substances. McArthur does not dispute that he also lived at this address at certain points in time. Other people, particularly Christopher Wuori, lived at this house when McArthur did not live there.

The enhancement does not apply here as the government did not establish that at the time <u>McArthur</u> maintained the premises; i.e. when he lived there; the manufacturing or distributing of controlled substance was a major purpose for which McArthur maintained the premises or

even that such activity was occurring there at that particular time. To the contrary, the evidence shows that other than for a single reference McArthur made at a December 2010 council meeting about Native Mob members being able to "cut up" their drugs, no drug distribution or manufacturing occurred at the "white house" while McArthur maintained the premises.

No evidence was introduced at trial showing that one of the primary or principal reasons for McArthur's maintaining a home in Cass Lake at XXX Grant Utley Avenue., was to manufacture of distribute controlled substances.[4] While McArthur on a single occasion at a council meeting did tell other Native Mob members that they could stay at his house if they came to the next council meeting, in Cass Lake, that they could "chop their shit up;" at best this is a one-off passing comment. Telling people they can bring their drugs with them on one occasion falls well short of establishing that the premises was maintained for the manufacture or distribution of drugs. It does not even come close.

---

[4] McArthur's legal address and the premises at issue is XXX Grant Utley Avenue, Cass Lake, MN. (RPSR p. F4).

The "white house" was searched in February 2011 when McArthur lived there. No evidence was introduced at trial that anything consistent with drug distribution or manufacturing was found during this search. The residence was again thoroughly searched on January 24, 2012, when McArthur lived there. TT pp. 5524, 5534-5535. Law enforcement found a small amount of marijuana at the residence consistent with personal use. TT. pp. 5534-5535. No other drugs were found at the residence. TT p. 5534. Law enforcement also did not find anything associated with drug distribution. TT p. 5535.

As the evidence did not establish that a principal purpose of the "white house" was the manufacturing or distribution of narcotics while McArthur maintained the premises, the government did not meet its burden of showing that any offense level increase is warranted under §2D1.1(b)(12). The District Court therefore clearly erred in finding that the two-level enhancement applies.

C. McArthur did not engage in a pattern of criminal conduct as a livelihood.

McArthur objected to the conclusion in ¶342 of the RPSR that he was subject to a two level offense level increase under §2D1.1 (b)(15)(E) for

Appellate Case: 17-2300   Page: 28   Date Filed: 08/07/2017 Entry ID: 4565548

committing the offense as part of a pattern of criminal conduct as a livelihood. The Commentary to §2D1.1 at Application Note 19 explains application of subsection (b)(15)(E) in greater detail. It provides that for purposes of this subsection, the terms "pattern of criminal conduct" and "engaged in as a livelihood" have the meanings given in §4D1.3.

Even if one accepts for the sake of argument that Mr. McArthur engaged in a pattern of criminal conduct, the evidence did not show that such conduct was "engaged in as a livelihood." Application Note 2 to §4B1.3 defines this term as meaning that "(A) the defendant derived income from the pattern of criminal conduct that in any 12-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (B) the totality of circumstances show that such criminal conduct was the defendant's primary occupation in that 12-month period…" U.S.S.G. § 4B1.3, Application Note 2. Even if a defendant has engaged in a pattern of criminal conduct and derives income from that conduct, the enhancement does not apply where the defendant in the end makes little money doing so. "The Sentencing Commission did not intend a sentence to be enhanced under this section when a defendant gains a high percentage of his income from criminal

Appellate Case: 17-2300    Page: 29    Date Filed: 08/07/2017 Entry ID: 4565548

conduct, yet his total income remains below minimum wage." *United States v. Nolder*, 887 F.2d 140, 142 (8th.Cir.1989).

The federal minimum wage during the time period at issue in this case was $7.25 an hour. 29 U.S.C. §206 (a)(c). 2,000 times this amount is $14,500. The government did not establish, and the District Court did not find, that Mr. McArthur made even close to this amount, certainly not more than this amount, during any 12-month period. Further, the RPSR does not contain any facts that support the enhancement under §2D1.1 (b)(15)(E). The District Court therefore erred in applying this enhancement.

D. <u>The error in the Guidelines calculation was not harmless.</u>

McArthur objected to the above Guidelines factors and resulting calculation and an examination for harmlessness is therefore appropriate. See *United States v. Johnston,* 533 F.3d 972, 978 (8th Cir.2008); *United States v. Mashek,* 406 F.3d 1012, 1017 (8th Cir.2005). "The Government bears the burden of persuasion to demonstrate that the error was harmless," that is, that the error did not affect McArthur's' substantial rights. *Spikes*, 543 F.3d at 1025.

Appellate Case: 17-2300    Page: 30    Date Filed: 08/07/2017 Entry ID: 4565548

The District Court's overruling the above objections resulted in a ten level increase to the Guidelines calculation in Appellant's case taking him from an adjusted offense level of 39 to an offense level of 49. The 420 month sentence of imprisonment imposed by the District Court on Count 7 falls above the range that would apply under a corrected Guidelines calculation: with a Criminal History Category of III, and an adjusted offense level of 39, the advisory Guidelines range is 324 to 405 months imprisonment. This Court has held that if "the sentence imposed falls within the guideline range urged by the appellant and if it is clear that the sentencing court would have imposed the same sentence regardless of whether the appellant's argument for a lower guideline range ultimately prevailed, there can be no reversible error in the sentence." *United States v. Harris,* 390 F.3d 572, 573 (8th Cir. 2004).

Here, however, the sentence imposed falls above the proposed Guidelines range and the District Court never indicated on the record that it would have imposed the same sentence if McArthur's guidelines calculation would have been different. Most importantly, the District Court never indicated that it would have imposed a total sentence of 480

25

months imprisonment if the guideline sentence was not life imprisonment. The District Court found that a substantial variance was appropriate. Because there is no clear indication that the District Court would not have varied downward from a range of 324 to 405 months imprisonment, the error in the Guidelines calculation was not harmless. See *Spikes,* 543 F.3d at 1025-1026. The Court of Appeals should therefore remand the case to the District Court for resentencing.

## CONCLUSION

The District Court erred in its Guidelines calculation. The error was not harmless. Appellant's sentence should therefore be vacated and the case remanded for resentencing.

Dated this 7th day of August, 2017.

GOETZ & ECKLAND P.A.

FREDERICK J. GOETZ (#185425)
Banks Building
615 1st Avenue N.E., Suite 425
Minneapolis, MN 55413
(612) 874-1552

ATTORNEY FOR APPELLANT

26

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and the 8th Cir. L.R. 28A(c), the undersigned certifies that this brief complies with the page and type-volume limitation of Fed. R. App. P. 32(a)(7). The brief was prepared using Microsoft Word 2010 Century Font in font size 14, which reports that the brief contains 5,832 words. The brief consists of 27 pages.

Dated this 7th day of August, 2017.

GOETZ & ECKLAND P.A.

FREDERICK J. GOETZ (#185425)
Banks Building
615 1st Avenue N.E., Suite 425
Minneapolis, MN 55413
(612) 874-1552

ATTORNEY FOR APPELLANT

27